The opinion of the court was delivered by
Breaux, J.
This is an action brought by Sol. Elgutter, the plaintiff, to have a policy of insurance reinstated and declared in full force and effect, and to compel the defendant to accept, the premiums unpaid. There was a judgment in the .District Court in favor of plaintiff, from which defendant appeals.
The plaintiff alleges that in 1892, the defendant issued a policy of insurance on the life of Herman Aronsohn for three thousand dollars, which was assigned by the insured to him, petitioner. The certificate of insurance declares, among other things, that premiums shall be paid within the designated time specified in the policy and that whether or not the insured receives the notice mentioned in the certificate, it shall be a condition precedent to the continuance of the policy, that a sum equal to the amount “of the last preceding mortuary premium and dues paid shall be paid said association within thirty days of the first week day of the month when due, and any deficiency in said amount shall be paid upon the demand of the association”. If there is default in the payment of premiums, the policy “shall expire and become null and void, and the payments previously made are forfeited.” It appears that the amount of the mortuary premiums and dues payable on the first day of February, 1896, or thirty days thereafter, was not paid, and it is, in consequence, claimed by the defendant insurance company that the policy thereby became null and void.
*1735 Regarding notice, petitioner avers that the defendant association failed to give him notice of the mortuary premiums and dues which were due February 1st, 1896, or thirty days thereafter; that on March 9th, 1896, he, through a representative, tendered to the agent of the defendant in New Orleans, the amount of the premium and dues, which was refused, and that since that time he has always been ready, to the knowledge of the association, to pay all his indebtedness to it, but that the defendant persistently refuses to accept payment; that under the terms of the policy, the company should have given him notice of the premiums and dues which he owed on February 1st, 1896, by addressing it to Newellton, in the parish of Tensas. Petitioner further avers that he was formerly domiciled in the city of New Orleans, where he received his notices and paid his premiums and dues; that in 1896 he left this city and took up his residence at Newellton; that the agent in New Orleans, whose duty it was to give notices, and to collect premiums, knew of his change of residence and address; that for the premiums and dues previous to February 1st, 1896, the defendant company, through its agent, mailed his notices to Newellton, instructing him to remit the amount called for, to the company in New York, and this he did, as directed, all except the last premium, which, owing to a want of notice, escaped his attention.
The defendant filed an exception of no cause of action. While this exception was pending, Herman Aronsohn, the insured, who had assigned his certificate to Elgutter, the plaintiff, intervened in the suit and adopted all the averments made by the plaintiff. He alleges that he was interested in having the indebtedness, upon which the assignment was made, paid at the maturity of the policy, and was, therefore, interested in having the policy reinstated; that it had been the custom of the defendant to give the plaintiff notice of the payment of the mortuary premiums and dues; that payments had always been demanded of plaintiff, and that the defendant company had looked to the plaintiff, and not to him, intervenor, knowing that he, plaintiff, had agreed to pay the premiums and dues.
The exception of no cause of action, filed by the defendant, as mentioned above, was overruled; and in due time, defendant filed his answer admití ing the execution of the policy and its assignment, as alleged, but denying that the contract was an existing contract, as it had become null and void through failure of plaintiff to make payment of premiums *1736 and dues as required. Defendant’s position further, is that it had given notice to Aronsohn, the insured, and that Elgutter was not entitled to notice.
The evidence shows that the defendant is a corporation organized under the laws of the State of New York, its business being that of insuring' the lives of its members upon the co-operative assessment plan; that on the first week-day of the months stated in the policy, its Board of Directors made assessments upon the entire membership for such sums as it deemed sufficient to meet the existing claims of death; that any member failing to receive notice of this assessment held himself bound to notify the home office of said failure and that a failure to pay the assessment forfeits his membership; but, that, as made evident by the charter, the Executive Committee of the Association has the power to reinstate a delinquent member, at any time, within one year, for a good cause, and payment of all the delinquent dues and assessments. The record shows that in June, 1892, the policy previously issued to Aronsohn was assigned to Elgutter, plaintiff, to secure ani indebtedness of the former to the latter. The defendant was duly notified of the assignment, and endorsed its consent on the assignment. The assignee, plaintiff, paid, as he stated and avers, the premiums up to and including that of February, 1896. The contract of insurance between the parties provides that “all notices addressed to a member or other person designated by said member at the last postoffice address appearing on the books of the association shall be deemed sufficient notice.” (Italics ours.)
In February, 1896, plaintiff received no notice from the association. The evidence discloses that a notice was mailed from the office in New York to the insured, Aronsohn, in New Orleans, and no notice was given to plaintiff, Elgutter, holder of the policy.
The premium was not paid on March 2nd, 1896, and, in consequence, the defendant company declared the policy forfeited. On the 9th of March, 1896, plaintiff offered to pay the delinquent premium, which same the company refused to accept. Plaintiff, as before stated, sues to compel the defendant to accept premiums and reinstate the policy. We will, in our opinion, consider other facts having bearing upon the issues presented.
We do not think that the exception of no cause of action should be sustained, for the reason that plaintiff had an actionable interest in the *1737 policy lie held', and the intervenor was interested in keeping the policy alive. One is properly plaintiff, and the other intervenor. The contract and the negotiations had created a privity between the plaintiff and the intervenor. Both are interested in sustaining the right claimed and the defendant is liable to both. It follows that the exception falls. Plaintiff had a substantial right, as assignee of the policy, and was interested in preventing its forfeiture. C. P. 15.
We now take up for decision plaintiff’s claim that no notice was given of the amount due by him on his policy on March 2nd, 1896. This contention is pressed upon our attention by plaintiff, who insists that he was entitled to notice as beneficiary. It is undoubtedly true that the assignment was made to plaintiff with the consent of the defendant company, as alleged. The policy is dated May 17th, 1892. The day after it was issued, the State of New York enacted a law in relation to insurance companies, prohibiting the forfeiture of policies unless notice “at the place where it should be paid, and the person to whom the same is payable shall be duly addressed and mailed to the person whose life is insured, or the .assignee of the policy (if notice of the assignment has been given to the corporation) at his or her last known postoffi.ee address by an officer of the corporation, or person appointed by it to collect such liremium at least fifteen, and not more than forty-five days prior to the day when the same is payable.” (Italics ours).
The contract of insurance contained an agreement, as before stated, that it should be governed according to the laws of the State of New York, quoting- from the policy, “the place of this contract being expressly agreed to be the home office of said association in the City of New York.” Plaintiff and defendant agree that the laws of New York, regarding this contract of insurance, should govern. This lawj, in view of the agreement between the parties, must be read as it enters into the contract. The one to whom the policy is payable, is entitled to notice. The assured made a waiver of notice, that is there was a printed waiver in the policy, as alleged, it is true, but, shortly thereafter, the statute came into force requiring- notice to the insured and the transferree. We have every reason to believe that the defendant company complied with the terms of this statute 'regarding- notice to be given to each of its members or transferrees and placed no reliance upon the sweeping waiver of notice clause in its policies. This being the case, the defendant becomes bound by the conduct it chose to follow *1738 in order to comply with, the law to which we have just referred. No attempt was made to give the least notice to plaintiff, although the defendant consented to the assignment^, and, thereby, assumed all the duty it owed to the beneficiary of one of its policies. We think, that as relates to the insured, or the beneficiary, the waiver could not be insisted upon as operating a forfeiture of the policy, unless it is made evident that the company intended to conduct its business without giving notice at all, and did not intend to comply with the ¡law which required notice. The beneficiary in this ease had always, in some way, received notice prior to the last premium installment, and had always paid. He was led into the belief that he could safely rely upon receiving notice. The eonrpany is not in a position to say to him: “True, you have not received notice, but none the less, you h)ave forfeited your right. The law requires of me that I should notify all my policy holders, but as to you, although you have not received notice, forfeiture must follow.” Plaintiff, as relates to notice, in good faith relied uxson agents with whom the insured had contracted. The company is hardly in a position to plead the want of authority, as one had been its agent and the other was still its general Manager. Pelican Insurance Co. in Liquidation, 41th Ann., 935.
The State manager, in h'is answer to a letter received from x>laintiff’s attorneys, says, that official notice had been mailed the assured, and notice had been given the beneficiary in the city (italics ours), yet that the latter notice had been given solely upon an individual responsibility, and as a personal reminder and favor to the beneficiary. We think that that which was treated as a personal favor was a right upon which plaintiff could have insisted. In accepting these favors, without any notice that they! were favors, he could well assume that he was receiving the treatment due him in receiving a notice similar to the one due to all others similarly concerned. There are other facts showing that it was not the intention of the company to avoid giving notice to any beneficiary who was entitled to it, as required by law and by its own regulations. We will not dwell upon these facts at any great length. As we read the testimony, it was the custom of the company to notify all beneficiaries to whom it had given consent to their being beneficiaries. Fitzpatrick and Husband vs. Mutual Benevolent Co., 25 Ann., 443.
The waiver of notice to which we have already referred was, in all probability, required ex abundanlia cautela. It may serve some pur *1739 pose, but not to the extent, however, of relieving the company from the effect of its own conduct in leading its policy holders to believe that they could always look forward to some sort of notice. It had become a rule of the company to issue timely notices. We take the view that these notices were not issued ex gratia, but that it had become the duty of the company to issue them to the assured, or to the assignee in case of the assignment of the policy. We can only repeat here, as applying, that which we said in Gunther vs. Mutual Aid Association, 40th Ann., 777: “There is not the slightest ground for attributing the failure to pay the assessment to any other cause than the want of notice,” and again, “the insured (here the assignee) had good reason to expect and to rely on receiving- notice to whom and where he should pay the instalment. It had always been given before, etc.” Citing Insurance Co. vs Eggleston, 96 U. S., 572.
The same doctrine was restated in a later case, and extended to a case where the insurance company was in the habit of receiving the premiums, though tendered a few days after maturity, and was, thereby, held to be estopped from claiming a forfeiture when the premium was tendered within a reasonable time after maturity. There are a number of cases sustaining this position. We think it was incumbent upon the association to give petitioner due notice of the mortuary premiums and dues exigible in February, 1896, and to address said notice to him at Newellton, Tensas Parish,, La.
The foregoing views relieve us, we think, from the necessity of determining- the question argued at bar and in the briefs regarding- the character of the company, that is, whether it is carried on on the cooperative or assessment plan, or whether it is not, and for that reason it does not come within the gi-asp of certain laws of New York which have been cited as bearing upon the question.
On that point, regarding the necessity of the company giving notice when it has created the impression that notice would be given, we take it that there id no difference between the New York and the Louisiana law upon the subject. In all the States, we take it, there are insurance companies issuing- notices to their policy holders or their assignees, and, thereby, creating confidence that no forfeiture will take place without notice. Such a course of action will cause the giving of notice to became a necessary pre-requisite to forfeiture.
Our study of this case has not resulted in convincing us that the *1740 policy has ever been forfeited, even if we were to assuime that the plaintiff was not entitled to notice, and. that it was enough to give notice to Aronsohn, the assignor. The required delays had not been given on the day that the forfeiture was declared by the Board of Directors of the defendant.
Plaintiff had thirty days of grace within which to make the payment, after the maturity of the premium allowed under the policy. The premium became due on the first day of February, 189G, in which month there were twenty-nine days. The company held the time to have elapsed on the second day of March, following, and on that day forfeited the policy. We think he had the whole of the second of March, within which to pay. Computation under the laws of New York, it appears, is on other lines. It is different in Louisiana. And in a matter relating exclusively to the remedy, the law of Louisiana applies, although it may not apply in matter relating to the obligation of the parties under the contract, or in matter relating to the interpretation to be given to it. The company had not been so exacting in requiring prompt payments of prior premiums. As to some of the premiums, more than thirty days were allowed as grace, and at the end of some of the terms of payment, the plaintiff was permitted to pay premiums even after the days of grace had elapsed. The company is bound by its own acts and by the conditions which it establishes. In our judgment, as relates to computation, the laws of Louisiana should govern in the execution of the contract, and not those of New York, as interpreted 'by the courts of that State. Under the Louisiana decisions, there was no legal forfeiture possible at the time made. A well considered case is reported in the 23 Circuit Court of Appeals Reports, p. 48, New York Life Insurance Co. vs. Runnell, in which the company, by terms of waiver, strong and infinite, attempted to have insurance contracts interpreted under the laws of the domicile of the company. The court, in that case, held that the waiver was of no avail; that the policy must be regarded as one subject to the laws of the State in which the insured was insured. We apply the principles laid down in that decision to the remedy, or to all steps in the nature of remedy or performance. We do not consider that they were waived, and if they had been, we do not think that, under our laws, the waiver would be controlling in a matter jurisdictional in its nature. The execution of the contract, as relates to the remedy, falls under the laws of the place of performance. The place of performance *1741 is here. The case is within the maxim locus reget actum. C. C., 10; C. P., 13; Hawley vs. Sloo, 12th Ann., 815. An obligation maturing on a dies non in Louisiana, is exigible only on the day after, while in some of the sister States it is due and exigible on the day before. When performance is required in Louisiana, it can only be required in accordance with the delays allowed by her laws.
In our view, we must hold that there was no forfeiture, even though, under the policy, notice was due to Aronsohn alone, and was properly sent to him. We desire, however, to be well understood as holding that notice was due to plaintiff, Elgutter, and not the insured, Aronsohn.
Defendant, moreover, contends that at no time were the dues tendered to any person authorized to receive them under the policy. This position of the defendant is met, we think, by the fact that the State manager acknowledged that a tender had been made, but one which he could not accept. He was the representative of the company. There was a condition precedent to payment imposed, that is, his reinstatement and release from the effect of asserted forfeiture. Before such reinstatement, payment or offer to pay, was an entirely useless formality. The necessity of the suit for reinstatement carries its costs with it.
Por these reasons the judgment is affirmed, and the plaintiff is to be reinstated by paying all dues due by him to date of reinstatement; this payment to be made immediately after the judgment of the court shall have become final.
Rehearing refused.